# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

**KIRSTEN STANBACK,** *individually and on behalf of others similarly situated*,

Plaintiff,

v.

**SITEL WORLDWIDE CORPORATION,** *a Delaware Corporation, and*
**SITEL OPERATING CORPORATION,** *a Delaware Corporation*,

Defendants.

Case No. _____

**FLSA Opt-in Collective Action**
**Rule 23 Class Action**

**JURY DEMANDED**

## ORIGINAL COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Kirsten Stanback ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, brings this Fair Labor Standards Act ("FLSA") Collective Action and Rule 23 Class Action Complaint against Defendants SITEL Worldwide Corporation and SITEL Operating Corporation (hereinafter referred to as "Defendants"), and states as follows:

### I. INTRODUCTION

1. This lawsuit is brought against Defendants as a collective action under the FLSA, 29 U.S.C. § 201, *et seq.*, to recover unpaid minimum wages and overtime owed to Plaintiff and other similarly situated current and former employees who are members of a collective as defined herein.

2. This lawsuit is also brought against Defendants as a Fed. R. Civ. P. 23 class action, alleging breach of contract under various states' laws, including Tennessee, to recover unpaid contractual wages owed to Plaintiff and other similarly situated current and former employees who are members of a class as defined herein.

## II. JURISDICTION AND VENUE

3. The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court further has jurisdiction over the Fed. R. Civ. P. 23 class action claims under 28 U.S.C § 1367 because the claims are so related to claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c) because the corporate Defendants are domiciled and headquartered in this District, Defendants regularly conducted and continue to conduct business in this District, and have engaged and continue to engage in the wrongful conduct alleged herein in this District during all material times in this cause.

## III. CLASS DESCRIPTIONS

5. Plaintiff brings this Fed. R. Civ. P. 23(b)(3) class action on behalf of the following similarly situated individuals:

> All current and former workers who were employed by and performed work for the Defendants in the United States during the statutory time period and who were not paid wages owed by the Defendants (the "Rule 23 class").

6. Plaintiff brings this FLSA collective action on behalf of the following similarly situated persons:

> All current and former workers who were employed by and performed work for the Defendants in the United States within the three (3) year period preceding the filing of the original Complaint and who is a Named Plaintiff or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b). ("the FLSA Class").

## IV. PARTIES

7. Plaintiff Kirsten Stanback is a resident of Nashville, Tennessee who worked for Defendants as a home-based customer care agent (hereinafter "HBCCA") from August 2019 to the present. Ms. Stanback's consent to join this lawsuit is attached to this Complaint as *Exhibit A*.

8. Defendant SITEL Worldwide Corporation is a Delaware corporation headquartered in Nashville, Tennessee. Defendant is licensed to do business in the State of Tennessee and its registered agent for service of process in Tennessee is Corporation Service Company, 2908 Poston Ave., Nashville, Tennessee 37203.

9. Defendant SITEL Operating Corporation is a Delaware corporation headquartered in Nashville, Tennessee. Defendant is licensed to do business in the State of Tennessee and its registered agent for service of process in Tennessee is Corporation Service Company, 2908 Poston Ave., Nashville, Tennessee 37203. Upon information and belief, Defendant, SITEL Operating Corporation is a wholly owned subsidiary of Defendant, SITEL Worldwide Corporation.

10. At all relevant times, Defendants jointly employed Plaintiff, and all members of the putative class, under the FLSA. As the joint employers of Plaintiff and all putative class members, Defendants were responsible for compliance with all applicable FLSA provisions. 29 C.F.R. § 791.2(a) and (b).

11. At all relevant times, Defendants owned and operated a business enterprise engaged in interstate commerce utilizing goods moved in interstate commerce as defined in 29 U.S.C. § 203(s).

12. Defendants constitute an "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), because they perform related activities through common control for a common business purpose.

13. At all relevant times, Plaintiff and the Class members were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

## V. FACTUAL BACKGROUND

14. According to their website, Defendants provide "contact center-based Business Process Outsourcing (BPO) solutions in the U.S. to companies in every major industry." *See http://sitel.com/countries/united-states*. Defendants' "client roster of composed of a marquee list of industry leaders, primarily Fortune 500 companies representing diverse verticals including Technology, Financial Services, Insurance, Communications, Manufacturing, Healthcare, Media & Entertainment and Travel." *Id.*

15. Employing over 61,000 people across the world, Defendants are "one of the world's largest and most diversified providers of customer care outsourcing services." *See http://www.sitel.com/our-company/invester-relations.*

16. In addition to traditional brick and mortar call center locations, Defendants' HBCCAs through their "Sitel Work@Home Solutions" program. *See http://www.sitel.com/solution/sitel-workhome- solutions*. Defendants employ the HBCCAs in full and part time positions in no less than 34 states across the country. *See http://www.sitel.com/careers/work-home/*.

17. Defendants require their HBCCAs to work a set schedule. Defendants do not compensate the HBCCAs for all work performed; instead, Defendants only pay the HBCCAs for the time they are on the telephone and available to accept calls. This practice results in HBCCAs not being paid for all time worked and for all of their overtime in violation of the FLSA and state contract law.

18. Specifically, Defendants do not compensate its HBCCAs for all work performed including work performed at the beginning of each shift in connection with starting and logging into various computer programs and applications; during each shift in connection with technical issues; during

each shift in connection with activities performed during the HBCCAs' lunch break; and subsequent to each shift in connection with shutting down and logging out of various computer programs and applications. Defendants' compensation policies/practices result in HBCCAs not being paid for all time worked and for all of their work, including overtime, in violation of the FLSA and state contract law.

19. Defendants' HBCCAs use multiple computer programs, software programs, servers and applications, in the course of performing their responsibilities. These programs, servers and applications, are an integral and important part of their work as they cannot perform their job without them.

20. All of Defendants' HBCCAs perform the same basic job duties and are required to use the same or similar computer programs, software programs, servers and applications.

21. Defendants' HBCCA jobs are non-exempt positions that typically pay a few dollars more than the federally mandated minimum wage.

22. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' HBCCAs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which occurred in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2.

23. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work- related

emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

24. Plaintiff has been employed by Defendants as an HBCCA in Nashville, Tennessee from August 2019 to the present. She is paid approximately $17.00 per hour. Plaintiff routinely works forty (40) or more hours per week.

25. As described above, prior to each shift Plaintiff was required to start-up and log-in to various secure computer programs, software programs, servers and applications. The start-up and log-in process took substantial time on a daily basis with said time ranging from 15 to 20 minutes per day.

26. Pursuant to Defendants' compensation policies/practices, Plaintiff and other HBCAAs are not paid for the pre- and post-shift activities described above. Defendants fail to pay HBCAAs for about 30 to 40 minutes per day of work performed in connection with the pre- shift and post-shift activities.

27. The time spent starting up and logging into each session directly benefits Defendants and this process is an essential part of HBCCAs' job responsibilities.

28. Likewise, the time spent shutting down and logging out of each session directly benefits Defendants and is an essential part of HBCCAs' job responsibilities.

29. Additionally, at periodic times both prior to or during her work shifts Plaintiff would experience technical issues with and be disconnected from Defendants' computer systems and/or software programs/applications.

30. Defendants fail to pay Plaintiff and their HBCAAs for all time they spend dealing with pre- or mid-shift technical issues. Specifically, Defendants fail to pay the HBCAAs for time spent:

    a.      On hold waiting to speak to a member of Defendants' technical support team – which often times takes 10 to 15 minutes or longer;

    b.        Speaking to members of Defendants' technical support team – which often times takes 10 to 15 minutes or longer; and

    c.        Time spent performing start-up and log-in procedures once the technical issue is resolved.

31. The unpaid time Plaintiff and the putative class spend in connection with technical issues directly benefits Defendants and this process is an essential part of Plaintiff's job responsibilities as a HBCCA.

32. Defendants' technical downtime compensation policies result in Plaintiff and the putative class being withheld substantial compensation on a daily and weekly basis.

33. Defendants also provide HBCCAs with one unpaid 60-minute lunch break per shift.

34. Defendants, however, require HBCCAs to perform the following functions during their unpaid lunch breaks:

    a.        Logging out of various computer programs and applications at the beginning of each lunch break but subsequent to clocking out of Defendants' time keeping system – a process that usually takes 5 minutes per shift;

    b.        Saving notes and case materials at the beginning of each lunch break but subsequent to clocking out of Defendants' time keeping system – a process that usually takes 5 minutes per shift;

    c.        On occasions where supervisors are unavailable, answering questions from other HBCCAs throughout the lunch break period and subsequent to clocking out of Defendants' time keeping system – a process that usually takes 15 minutes per shift and occurred 2 to 3 times per week; and

    d.        Logging into various computer programs and applications at the end of each lunch break but prior to clocking into Defendants' time keeping system – a process that usually takes 5 minutes per shift.

35. Defendants knew or could have easily determined how long it takes HBCCAs to complete the pre-shift start-up and log-in process, and the post-shift log-out process, and Defendants could

7

Case 3:22-cv-00025   Document 1   Filed 01/14/22   Page 7 of 16 PageID #: 7

have properly compensated Plaintiff and the putative class for the off-the-clock work they performed, but did not.

36. Defendants knew or could have easily determined the amount of unpaid time HBCCAs spend in connection with technical issues and could have paid the employees for this time, but did not.

37. Defendants knew or could have easily determined the amount of unpaid time HBCCAs spend in connection activities performed during their lunch breaks and could have paid the employees for this time, but did not.

## VI. FLSA COLLECTIVE ACTION ALLEGATIONS

38. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The group of employees on behalf of whom Plaintiff brings this collective action is similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

39. The employment relationship between Defendants and every FLSA class member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up and log-in time, time associated with technical issues, time associated with performing work during lunch breaks, and post-shift shutdown and log-out time owed to each employee – does not vary substantially from FLSA class member to FLSA class member.

40. The key legal issues are also the same for every FLSA class member, to wit: whether the 10 to 30 minutes of unpaid pre-shift and post-shift time per shift, and the substantial unpaid time

spent in association with technical issues and work performed during lunch breaks, is compensable under the FLSA.

41. Plaintiff estimates that the putative FLSA Class, including both current and former employees over the relevant period, includes several thousand members. The precise number of FLSA class member should be readily available from a review of Defendants' personnel and payroll records.

## VII. RULE 23 CLASS ACTION VIOLATIONS- BREACH OF CONTRACT

42. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

43. There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether there was an agreement to compensate HBCCAs for all compensable time worked;

    b. Whether the pre-shift time Rule 23 Nationwide Class members spend on start-up and log-in activities each session is compensable time;

    c. Whether the unpaid time Rule 23 Nationwide Class members spend in connection with technical issues is compensable time;

    d. Whether the unpaid time Rule 23 Nationwide Class members spend performing work functions during their lunch breaks is compensable time;

    e. Whether the post-shift time Rule 23 Nationwide members spend on shutdown and log-out activities is compensable time; and

  f.  Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract.

44. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

45. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and she retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

47. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants and their corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

10

Case 3:22-cv-00025 Document 1 Filed 01/14/22 Page 10 of 16 PageID #: 10

48. Application of various state laws at issue in this case will be manageable as there are no material variations among the law of the states for which certification is sought.

49. In other words, the law of breach of contract is essentially the same nationwide, and therefore class certification is proper.

50. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S.Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

51. As a direct and proximate result of Defendants' breaches of the contracts alleged herein, Plaintiff and every other member of the Rule 23 Nationwide Class has been damaged, in an amount to be determined at trial.

52. These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

53. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
<u>**VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. --**</u>
<u>**FAILURE TO PAY OVERTIME**</u>

54. Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

55. At all times relevant to this action, Defendants were joint employers under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*. *See also* 29 C.F.R. § 791.2(b).

56. At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

57. At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

58. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

59. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

60. At all times relevant to this action, Defendants required Plaintiff and all similarly situated current and former Class members to perform 10 to 30 minutes of pre-shift computer start- up/log-in time and post-shift shutdown/log-out time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

61. At all times relevant to this action, Defendants failed to pay Plaintiff and all similarly situated current and former Class members' compensation for work they performed related to technical issues associated with Defendants' computer programs and software.

62. At all times relevant to this action, Defendants required Plaintiff and all similarly situated current and former Class members to perform work activities during their unpaid 60-minute lunch

breaks, but failed to pay them the federally mandated overtime compensation for any of the services performed.

63. The pre-shift, post-shift, technical issues and lunch break unpaid work performed by Plaintiff and all similarly situated Class members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

64. In workweeks where Plaintiff and other Class members worked 40 hours or more, the uncompensated pre-shift start-up and log-in time, the uncompensated technical issue time, the uncompensated lunch break time, and the uncompensated post-shift shutdown and log-out time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C. § 207.

65. Plaintiff and other Class members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

66. Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it takes HBCCAs to perform the off-the-clock work they performed including the work they performed pre-shift, in connection with technical issues, during their lunch break, and post-shift. Further, Defendants could have properly compensated Plaintiff and the Class for these activities, but did not.

67. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## Count II
## (Rule 23 Nationwide Class Action)
## BREACH OF CONTRACT

68. Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

69. At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendants' behalf.

70. Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

71. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, have an hourly rate between $9.00 and $17.00 per hour.

72. Plaintiff and every other Rule 23 Nationwide Class member performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid work that was required of them, accepted by Defendants, and that they performed, in connection with pre-shift, technical issues, lunch break, and post-shift activities.

73. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with pre-shift, technical issues, lunch break, and post-shift activities, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

74. Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

75. Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing the off-the-clock activities, which is a fundamental part of an "employer's job."

## RELIEF REQUESTED

Whereas, Plaintiff, individually, and/or on behalf of herself and all other similarly situated members of the classes, request this Court to grant the following relief against Defendants:

A. Designation of this cause as a collective action on behalf of the FLSA class and promptly issue notice pursuant to 29 U.S.C. § 216(b), apprising FLSA class members of the pendency of this action and permitting other members of the FLSA class to assert timely FLSA claims;

B. For an Order finding Defendants liable under the FLSA for unpaid minimum wages and overtime due to Plaintiff (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

C. For certification of and notice to the FLSA Class and Rule 23 Class, as further defined and determined by motions practice, and to properly inform them of their rights;

D. An Order designating Plaintiff as the representative of the FLSA class, the Rule 23 class and undersigned counsel as Class counsel for the same;

E. An award of damages associated with Defendants' breach of contract;

F. An award of all contractually agreed to wages;

G. For an Order finding that Defendants' violations of the FLSA were willful.

H. An award of prejudgment and post-judgment interest at the applicable legal rate to Plaintiff and other members of the classes;

I. An award of costs, expenses, and disbursements relating to this action together with reasonable attorneys' fees and expert fees to Plaintiff and other members of the classes;

J. Such other general and specific relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a **TRIAL BY JURY** on all issues so triable.

Dated: January 14, 2022.  Respectfully Submitted,

*s/ J. Russ Bryant*
J. Russ Bryant (TN BPR #33830)
Robert E. Turner, IV (TN BPR #35364)
Robert E. Morelli, III (TN BPR #37004)
**JACKSON, SHIELDS, YEISER, HOLT OWEN & BRYANT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
*rbryant@jsyc.com*
*rturner@jsyc.com*
*rmorelli@jsyc.com*

-and-

Nina H. Parsley (TN BPR #23818)
**MICHAEL D. PONCE & ASSOCIATES**
Attorneys at Law
400 Professional Park Drive
Goodlettsville, Tennessee 37072
Telephone: (615) 851-1776
Facsimile: (615) 859-7033
*nina@poncelaw.com*

**ATTORNEYS FOR PLAINTIFF AND ON BEHALF OF OTHERS SIMILARLY SITUATED**